In re **GOLDEN DISTRIBUTORS, LTD., and Capital Cigar and Tobacco Company, Incorporated, et al., Debtors.**

**GOLDEN DISTRIBUTORS, LTD. d/b/a Golden–Capital Distributors, Plaintiff,**

v.

**Bernard REISS and Harold Levinson Associates, Inc., Defendants.**

**GOLDEN DISTRIBUTORS, LTD. d/b/a Golden–Capital Distributors, Plaintiff,**

v.

**Allan FEIG, Arthur DiLorenzo and Harold Levinson Associates, Inc., Defendants.**

**Bankruptcy Nos. 90–B–21146 to 90–B–21149, 90 Adv. 6178 and 90 Adv. 6179.**

United States Bankruptcy Court, S.D. New York.

June 11, 1991.

Summit Rovins Feldesman, New York City, (John L. Ambile, and Andrew E. Westly, of counsel), for debtors.

Shea & Gould, New York City, (Merrye Piltz Schindler, and Alyson M. Weiss, of counsel), for Harold Levinson Associates, Inc.

Tananbaum & Sibener, Commack, N.Y., for Arthur DiLorenzo.

Richard V. Rappaport, Great Neck, N.Y., for Bernard Reiss.

Jacoby & Meyers, Brooklyn, N.Y. (Gregory Messer, of counsel), for Allan Feig.

### DECISION ON MOTIONS FOR DISMISSAL OF COMPLAINT OR FOR ABSTENTION

HOWARD SCHWARTZBERG, Bankruptcy Judge.

The defendants in these consolidated adversary proceedings have moved for an order pursuant to Bankruptcy Rule 7012(b) and Fed.R.Civ.P. 12(b)(6) dismissing the complaints filed by the debtor, Golden Distributors, Ltd. d/b/a Golden Capital Distributors, for failure to state a claim upon which relief can be granted. Alternatively, the defendants request that the court abstain from hearing the adversary proceedings pursuant to the discretionary absten-

tion provision in 28 U.S.C. § 1334(c)(1) and Bankruptcy Rule 5011(b).

The adversary proceedings against the defendants were consolidated for purposes of administration. However, the allegations and demands for relief in the two complaints are the same except for an additional claim with respect to promissory notes executed by defendants Allan Feig and Arthur DiLorenzo.

*Background*

The debtor is a debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108, having filed with this court on November 13, 1990 its voluntary petition for reorganizational relief under Chapter 11 of the Bankruptcy Code. The debtor is in the business of the wholesale distribution of tobacco and candy products.

In May of 1990, the debtor acquired a corporation known as Metropolitan Distribution Services, Inc. ("Metropolitan"), which had previously been engaged in the same business as the debtor. The defendants, Allan Feig ("Feig") and Arthur DiLorenzo ("DiLorenzo") had been employees of Metropolitan pursuant to written employment contracts and became employees of the debtor when it acquired Metropolitan. Defendant, Bernard Reiss ("Reiss"), was an employee of the debtor under a written employment contract.

On September 21, 1990, the debtor terminated Reiss' employment. On December 4, 1990, the debtor terminated the employment of Feig and DiLorenzo, who thereafter entered the employment of the defendant, Harold Levinson Associates, Inc. ("Levinson"), a company located in Plainview, New York, engaged in selling the same products as are sold by the debtor.

The defendants, Feig, DiLorenzo and Reiss, had agreed in writing, while previously employed by the debtor, not to compete with the debtor and not to be employed by or furnish any services to any business that distributed any products of the type distributed by the debtor or otherwise engage in the same type of business for a period of three years following the termination of their employment.

Count I of the complaints, alleges that after the termination of their employment by the debtor, defendants, Feig, DiLorenzo and Reiss, together with defendant Levinson, solicited and continued to solicit customers of the debtor in violation of the restrictive covenants. The complaint further alleges that the defendants' servicing of the debtor's customers and appropriation of confidential information is a conversion of the debtor's property and violates the debtor's contractual and common-law rights. Accordingly, the debtor seeks injunctive relief.

Count II of the complaints seeks monetary compensation for damages allegedly sustained by the debtor.

Count III of each complaint alleges that Feig, DiLorenzo, Reiss and Levinson deliberately interfered with the debtor's ongoing relationships with its customers with the intent to inflict harm on the debtor and to unjustly enrich the defendants, causing damage to the debtor in the sum of $500,-000.00 for each complaint.

Count IV seeks compensatory damages of $500,000.00 for intentional misconduct of Feig, DiLorenzo, Reiss and Levinson as regards each of the two complaints, together with exemplary damages.

Count V in the complaint against Feig, DiLorenzo and Levinson seeks the unpaid principal of a loan made by the debtor's predecessor, Metropolitan, to Feig and DiLorenzo, which became accelerated when their employment was terminated. The loan is evidenced by promissory notes issued by Feig and DiLorenzo.

Count VI of the complaint against Feig, DiLorenzo and Levinson, and Count V of the complaint against Reiss and Levinson allege that the debtor is entitled to a turnover of the delivery routes, the proceeds thereof and the confidential information allegedly converted and interfered with by the defendants.

Count VII of the complaint against Feig, DiLorenzo and Levinson, and Count VI of the complaint against Reiss and Levinson seek damages for the defendants' alleged

violation of the automatic stay imposed under 11 U.S.C. § 362(a).

## DISCUSSION

In considering a motion to dismiss a complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, as made applicable under Bankruptcy Rule 7012, on the ground that the complaint fails to state a claim upon which relief can be granted, the court must accept as true all of the well-pleaded facts alleged in the complaint. *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Bloor v. Carro, Spanbock, Londin, Rodman & Fass*, 754 F.2d 57 (2d Cir.1985). The motion must be granted when it appears with certainty that no set of facts could be proven at trial which would entitle the plaintiff to any relief. *Conley v. Gibson, Id.; Dioguardi v. Durning*, 139 F.2d 774 (2d Cir.1944); *In re Rudaw/Empirical Software Products, Ltd.*, 83 B.R. 241 (Bankr.S.D.N.Y.1988); *Trans World Airlines, Inc., et al v. Texaco, Inc. (In re Texaco )*, 81 B.R. 813 (Bankr. S.D.N.Y.1988).

### Count I

■ The injunctive relief sought by the debtor against the defendants Feig, DiLorenzo and Reiss is primarily based on the restrictive agreements which they signed as part of their employment obligations before their services were terminated by the debtor. They agreed not to compete and not to solicit business for products sold by the debtor, or to be employed by a business that distributes such products, for a period of three years following their termination of their employment by the debtor. The debtor seeks to enjoin these defendants and Levinson, the employer of Feig and DiLorenzo, from employing them and from soliciting business from the debtor's customers. Additionally, the debtor seeks to enjoin the defendants from using any customer lists or other confidential or proprietary business information of the debtor. Count I does not allege that the defendants' services are unique or extraordinary or that the defendants are, in fact, soliciting the debtor's customers while using customer lists or confidential or proprietary

business information belonging to the debtor. Indeed, Count I fails to allege any valid property interests with respect to the debtor's business which are interfered with by the defendants.

■ The restrictive covenants which the defendants, Feig, DiLorenzo and Reiss signed may not be used by the debtor after it fired them for the purpose of preventing them from earning a living unless the debtor can point to trade secrets, customer lists or special property interests belonging to the debtor with respect to which the debtor is entitled and which have been misappropriated by the defendants and used by them in violation of the restrictive covenants. *American Broadcasting Companies v. Wolf*, 52 N.Y.2d 394, 438 N.Y.S.2d 482, 420 N.E.2d 363 (1981); *Reed, Roberts Assoc., Inc. v. Strauman*, 40 N.Y.2d 303, 386 N.Y.S.2d 677, 353 N.E.2d 590 (1976). Absent an allegation that the defendants, Feig, DiLorenzo and Reiss, have usurped the debtor's trade secrets, customer lists, or other proprietary interests, it follows that Count I cannot survive a motion bottomed on Fed.R.Civ.P. 12(b)(6) because it fails to state a claim upon which relief can be granted against these defendants.

Defendant Levinson is a competitor of the debtor and is free to employ the defendants, Feig and DiLorenzo. Count I of the complaint does not allege that Levinson solicited their services or that Levinson misappropriated or violated any property interests of the debtor or converted any valid property interest of the debtor in the course of Levinson's business. Although Levinson is charged in Count I with violating the automatic stay imposed under 11 U.S.C. § 362(a) by soliciting the debtor's customers and interfering with the debtor's property rights, this allegation had previously been rejected by this court in connection with the debtor's motion to enforce the automatic stay.

Generally, an injunction will not be granted to prohibit the solicitation of individual customers of an enterprise by a competing firm when those customers were not under some contractual obli-

gation to remain with the raided enterprise and the competing firm had not appropriated a confidential written customer list. *See Glosband v. Watts Detective Agency, Inc.,* 21 B.R. 963, 972 (D.Mass.1981). The significance of a written customer list which is entitled to confidentiality lies in the fact that the employer is regarded as the owner of the written paper which is property of the estate. *Id.* at 973. In such circumstances, the courts will issue an injunction not because of a misappropriation of property from a debtor's estate, but because of unfair trade practices, unfair competition and the protection of trade secrets. *See Integrated Cash Management Services v. Digital Transactions, Inc.,* 732 F.Supp. 370, 377 (S.D.N.Y.1989). ("One important factor often considered is whether there existed an agreement between the employee and the former employer claiming misappropriation of trade secrets.") In view of the fact that there was no written customers list maintained by the debtor which might be regarded as protectable property and entitled to confidentiality, it follows that the defendants' solicitation of customers of the debtor whose names were readily obtainable from classified telephone directories and other public sources does not constitute an impermissible obtaining of possession or control by the defendants of property of the debtor's estate, or from the debtor's estate.

*In re Golden Distributors, Ltd.,* 122 B.R. 15, 21 (Bankr.S.D.N.Y.1990).

Accordingly, Count I of the complaint also fails to state a claim against defendant Levinson upon which relief can be granted against it.

The debtor's overly broad interpretation of 11 U.S.C. § 362(a) would cover intangible rights so that a party could violate the stay simply by asserting rights contrary to the debtor's version of the rights. The D.C. Circuit Court has recently rejected this broad interpretation for turnover purposes and held that a party could not be compelled to turnover to the debtor unlicensed software programs incorporated in validly licensed computer hardware equipment in the possession of the defendant-licensee. *United States v. Inslaw, Inc.,* 932 F.2d 1467 (1991).

### Count II

This Count does not allege any misconduct on the part of the defendants or any property rights or interests belonging to the debtor which were interfered with or violated by the defendants. It merely states a claim for damages, but does not allege the basis for the debtor's entitlement to damages. Count II cryptically reads as follows:

> Golden has been substantially damaged and is entitled to be compensated by the defendants, and each of them to the extent of all monies earned and/or received by them, or either of them from customers and former customers of Golden.

Standing alone, as it must for the purpose of Fed.R.Civ.P. 12(b)(6), Count II fails to state a claim against the defendants upon which relief can be granted against them. It is merely a claim for damages without a specification of any misconduct on the part of the defendants which would entitle the debtor to compensation from them.

### Counts III and IV

These Counts allege that the defendants deliberately and with intent inflicted harm on the debtor by interfering with the debtor's ongoing relationship with its customers. Although the debtor does not have a proprietary interest in its customers, and they are not property of the debtor's estate within the meaning of 11 U.S.C. § 541, the debtor does have a right to seek damages for tortious interference with its business activities. *See Martin Ice Cream Co. v. Chipwich, Inc.,* 554 F.Supp. 933, 945 (S.D.N.Y.1983); *Israel v. Wood Dolson Co.,* 1 N.Y.2d 116, 151 N.Y.S.2d 1, 134 N.E.2d 97 (1956). Counts III and IV state a claim for tortious interference with the debtor's economic interests or advantage. Accordingly, Counts III and IV may not be dismissed because the allegations in these Counts are assumed to be true for purposes of Fed.R.Civ.P. § 12(b)(6) and should not be dismissed if the debtor can prove a

set of facts in support of its claims. *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

### Count V against Feig and DiLorenzo

■ This Count seeks the unpaid principal balance under a promissory note issued by Feig and DiLorenzo to the debtor's predecessor, Metropolitan, in the sum of $364,000.00, jointly. It is alleged that this note is due and payable on or before July 15, 1995, or on demand if a default occurs before this date. The note states that a termination of Feig's and DiLorenzo's employment constitutes a default. Thus, since the employment of these defendants was terminated by the debtor, the debtor claims that Feig and DiLorenzo are therefore required to pay the debtor the unpaid principal balance of the note.

Manifestly, Count V states a claim against Feig and DiLorenzo for nonpayment of a written promissory note held by the debtor. Hence, it may not be dismissed on a motion predicated upon Fed.R.Civ.P. 12(b)(6).

### Count V against Reiss and Levinson
### and
### Count VI against Feig, DiLorenzo and Levinson

■ The language of these Counts against the defendants is identical and states:

As a result of the aforementioned, Golden is entitled to turnover of the delivery routes, the proceeds thereof and the confidential information converted and interfered with by defendants.

Assuming that this language is intended to incorporate all of the previous allegations in the complaint, these Counts, nonetheless, fail to state a claim for relief. The complaint fails to allege any property of the estate belonging to the debtor which may be the subject of a turnover action. The debtor does not allege that it owned or maintained tangible recorded or documented delivery routes or customer lists which were obtained by the defendants or are in the defendants' possession and are capable of being turned over to it. In other words,

the debtor does not point to any *res*, or property of the estate, in the possession or control of the defendants which may be the subject of a turnover proceeding. The mere solicitation of the debtor's customers by the defendants or the defendants' deliveries of merchandise along the same delivery routes utilized by the debtor's delivery trucks will not support a turnover proceeding unless the debtor alleges that the defendants acquired confidential customer lists from the debtor or improperly obtained or retained confidential documented copies of the debtor's delivery routes.

The court previously denied the debtor's motion to enforce the automatic stay against the defendants because it was found that there were no written confidential customer lists maintained by the debtor; there were no exclusive sales contracts between the debtor and any of its customers; there were no confidential lists of the debtor's delivery routes; there was no confidential proprietary business information as to the names and locations of the debtor's customers, and the debtor could point to no property interest with respect to its potential customers which could be interfered with by the defendants. *In re Golden Distributors, Ltd.*, 122 B.R. at 21. In these circumstances, the defendants have no property interest of the debtor in their possession which this court could direct be turned over to the debtor. Therefore, Count V of the complaint against Reiss and Levinson and Count VI of the complaint against Feig, DiLorenzo and Levinson must be dismissed for failing to state a claim upon which turnover relief can be granted. *See United States v. Inslaw, Inc.*, 932 F.2d 1467 (D.C.Cir.1991).

### Count VI against Reiss and Levinson
### and
### Count VII against Feig, DiLorenzo and Levinson

■ These Counts seek damages for deliberate violations of the automatic stay imposed under 11 U.S.C. § 362(a) and enforcement of the stay against the defendants. As in the case of Count I, Count VI against Feig, DiLorenzo and Levinson and

Count V against Reiss and Levinson, these Counts fail to state a claim against the defendants upon which relief can be granted. It was previously found that the defendants' conduct did not violate the automatic stay because the debtor did not have any property interest within the meaning of 11 U.S.C. § 541 which was interfered with by the defendants in violation of the automatic stay. *In re Golden Distributors, Ltd.*, 122 B.R. at 21. *See United States v. Inslaw, Inc.*, 932 F.2d 1467 (D.C. Cir.1991).

### Report and Recommendation on Discretionary Abstention

■ The three Counts which do pass muster under Fed.R.Civ.P. 12(b) are Counts III and IV, which seek damages for the defendants' alleged intentional misconduct for interfering with the debtor's ongoing relationships with its customers and Count V of the complaint against Feig and DiLorenzo, which is bottomed on their promissory notes issued to the debtor. As to these state law tort and contract claims, the defendants maintain that this court should exercise its discretion and abstain from determining these issues in the interest of comity with state law or respect for state law in accordance with 28 U.S.C. § 1334(c)(1).

There is no question that the remaining Counts in the debtor's complaint do not involve core proceedings, as expressed in 28 U.S.C. § 157(b)(2)(B), but are otherwise related to a case under title 11, as noted in 28 U.S.C. § 157(c)(1). These state law claims for tortious interference and breach of contract are related to the debtor's title 11 case because the outcome of these related proceedings could have an effect on the bankruptcy estate and could alter the debtor's options with regard to its reorganizational relief. *Pacor v. Higgins*, 743 F.2d 984, 994 (3rd Cir.1984). The remaining Counts are not core proceedings because they do not invoke a substantive right provided by title 11. *In re Wood*, 825 F.2d 90 (5th Cir.1987).

There is no compelling reason why this court should exercise its discretion and abstain from hearing the remaining Counts. There is no pending state court case between the parties involving these issues and they do not invoke unsettled issues of state law or matters of substantial public importance. In the interests of justice and expediency, the remaining Counts can be resolved promptly in the bankruptcy court, which will substantially contribute to the speeding up of the reorganizational process.

It should be noted that the amendments to the Bankruptcy Rules which go into effect August 1, 1991 provide in amended Rule 5011(b) that the bankruptcy judge may enter a dispositive order with regard to abstention under 28 U.S.C. § 1334(c). However, until that Rule takes effect, this court will follow current Rule 5011(b) and recommend to the district court that an order be entered denying the defendants' motion for discretionary abstention.

### CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(a). This is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(A). The motions for dismissal of the complaint involve core proceedings in accordance with 28 U.S.C. § 157(b)(2)(A). The defendants' alternative motion for discretionary abstention does not involve a core proceeding, but concerns proceedings which relate to a case under title 11, as referred to in 11 U.S.C. § 157(c)(1).

2. The defendants' motions to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6) and Bankruptcy Rule 7012 is granted as to Counts I, II, V and VI of the complaint against Reiss and Levinson, and Counts I, II, VI and VII of the complaint against Feig, DiLorenzo and Levinson. These Counts do not state claims upon which relief can be granted.

3. The defendants' motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6) and Bankruptcy Rule 7012 is denied as to Counts III, IV, and V of the complaint against Feig, DiLorenzo and Lev-

inson because these Counts state claims upon which relief can be granted.

4. The defendants' motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6) and Bankruptcy Rule 7012 is denied as to Counts III and IV of the complaint against Reiss and Levinson because these Counts state claims upon which relief may be granted.

5. Pursuant to Bankruptcy Rule 5011(b) it is recommended that the defendants' alternative motion for discretionary abstention in accordance with 28 U.S.C. § 1334(c)(1) is denied.

SETTLE ORDER on notice with respect to the motions to dismiss the complaint. Objections to the recommendation for denial of the abstention motions shall be served as provided in Rule 5011(b) within ten (10) days of service of the foregoing recommendation.