The SCOTT FETZER COMPANY,
Plaintiff

v.

Raymond G. GEHRING, doing business as Northeastern Vacuum Cleaner Company, Defendant

No. CIV.A.02–CV–02917.

United States District Court,
E.D. Pennsylvania.

Sept. 23, 2003.

---

Robert P. Ducatman, Christina J. Moser, Jones Day Reavis & Pogue North Point, Cleveland, OH, Margaret S. Woodruff, Schnader Harrison Segal & Lewis LLP, Philadelphia, PA, for Scott Fetzer Company, Plaintiff.

*MEMORANDUM OPINION*

GARDNER, District Judge.

This matter is before the court on Plaintiff Scott Fetzer's Motion for Summary

Judgment, Default, and Rule 37 Sanctions filed June 6, 2003. Pursuant to our Order dated June 27, 2003, plaintiff supplemented its request for judgment by filing Plaintiff Scott Fetzer's Statement in Support of an Order Awarding to Plaintiff Attorney Fees and Costs on July 31, 2003. On June 27, 2003, after oral argument, we granted plaintiff's motion for summary judgment and enjoined defendant from continuing to make illegal use of the Kirby Trademark owned by plaintiff. We reserved final judgment pending the submission of affidavits regarding plaintiff's attorney's fees and costs. Having now received such affidavits and judging them credible, we now enter judgment in favor of plaintiff on Counts I, II, III, IV, and V of the Complaint and award plaintiff $50,000.00 in attorney's fees and $5,280.03 in costs.

The within civil action is a trademark infringement claim under the Lanham Act.[1] It is before the court on federal question jurisdiction. *See* 15 U.S.C. § 1121; 28 U.S.C. § 1331; 28 U.S.C. § 1338. The court has supplemental jurisdiction over plaintiff's pendent state law claims. *See* 28 U.S.C. § 1367. Venue is proper because defendant's business, where the infringing conduct takes place, is in Reading. *See* 28 U.S.C. § 118; 28 U.S.C. § 1391.

There are five counts in the Complaint. Count I is an Unfair Competition/False Designation of Origin claim under 15 U.S.C. § 1125(a). Count II is a Trademark Dilution claim under 15 U.S.C. § 1125(c). Count III is a Trademark Infringement claim under 15 U.S.C. § 1114. Count IV is an Unfair Competition claim under the common law of the Commonwealth of Pennsylvania. *E.g. Beauty Time v. VU Skin Systems,* 118 F.3d 140 (3d

Cir.1997). Count V is a Dilution claim under 54 Pa.C.S.A. § 1124.

The progress of this action has been marred by the refusal of pro se defendant Raymond G. Gehring to defend himself. The defendant has engaged in a pattern of discovery violations and flouting of court Orders.

Defendant's misconduct began when he failed to provide initial disclosures as required by Rule 26(a) of the Federal Rules of Civil Procedure. When The Scott Fetzer Company ("Scott Fetzer") served interrogatories [2] and requests for productions of documents [3] on October 22, 2002, Mr. Gehring refused to respond to the requests until Ordered to do so by United States Magistrate Judge Arnold C. Rapoport on January 7, 2003. When Mr. Gehring did respond his response was to make seemingly meritless objections to all plaintiff's requests.

On January 24, 2003, Mr. Gehring served interrogatories and requests for productions of documents on January 24, 2003. In plaintiff's objections to these requests, plaintiff characterized the requests as "unintelligible and irrelevant." We agree that it is difficult to understand precisely what defendant sought in discovery and are unable to determine how his requests would lead to evidence likely to be pertinent to the issues presented in either the Complaint or the Answer.

Part of Magistrate Judge Rapoport's January 7, 2003, Order was to direct defendant to obtain counsel on or before January 21, 2003. Defendant sent a letter to Magistrate Judge Rapoport on January 21, 2003, stating that he had been unable to comply with the Judge's Order and needed until February 4, 2003, to comply

1. 15 U.S.C. §§ 1111–1129.

2. *See* Fed.R.Civ.P. 33.

3. *See* Fed.R.Civ.P. 34.

with the Order. Defendant failed to comply with this Order.

On February 20, 2003, we held a Rule 16 telephone status conference. Despite being advised of the conference and attempts by plaintiff to secure defendant's presence at the conference, defendant failed to appear at the conference. During that conference, we Ordered plaintiff take defendant's deposition by April 20, 2003.

■ On February 27, 2003, plaintiff served their notice of deposition of Mr. Gehring upon defendant. The deposition was to take place at Barley, Snyder, Senft & Cohen, LLC, 501 Washington Street, P.O. Box 942, Reading, PA 19603–0942 at 10.00 o'clock A.M. on Monday, March 17, 2003.[4] Mr. Gehring, however, avoided service of a subpoena commanding his attendance at the deposition.

On March 15, 2003 plaintiff received the Notice of Defendant's Objection of Deposition. Mr. Gehring's objections are without merit. Needless to say, Mr. Gehring failed to appear for the deposition.

On April 2, 2003 Magistrate Judge Rapoport again became involved. On that day, Judge Rapoport Ordered plaintiff to check its files to see if there was any indication that defendant had a contract or agreement with Scott Fetzer or any other indication that defendant's contentions had any merit. Plaintiff complied with that Order on April 16, 2003, and found no record of any contract or agreement with Mr. Gehring.

Magistrate Judge Rapoport's also directed defendant to appear for a deposition to be noticed by plaintiff after plaintiff had complied with the April 2, 2003, Order. Despite compliance by plaintiff, Mr. Gehring avoided the scheduling of his deposition by failing to agree to a deposition time.[5]

On May 6, 2003, Magistrate Judge Rapoport Ordered defendant to appear on May 13, 2003, at 1.30 o'clock P.M. in Magistrate Judge Rapoport's chambers at the Edward N. Cahn United States Courthouse in Allentown, Pennsylvania, for the purpose of the deposition. Defendant failed to appear. As a result of defendant's obstreperous behavior, plaintiff was unable to take defendant's deposition.

On June 6, 2003, Plaintiff Scott Fetzer's Motion for Summary Judgment, Default, and Rule 37 Sanctions was filed. We note that defendant neither disputed facts presented therein nor otherwise objected to plaintiff's motion for summary judgment. Moreover, despite being noticed, defendant chose not to appear at the June 27, 2003, argument on plaintiff's motion. Furthermore, defendant filed no motion for reconsideration, although we observe that defendant filed an appeal of our decision on August 1, 2003.[6]

## FACTS

Based upon the pleadings, affidavits, and undisputed exhibits submitted by Scott Fetzer, the pertinent facts are as follows.

---

4. We take judicial notice that this location is approximately 1.2 miles from Mr. Gehring's home and business. *See* Fed.R.Evid. 201.

5. For a period of time during discovery, defendant refused to accept service of documents and scheduling requests from plaintiff.

6. We purposefully withheld entering judgment after we granted plaintiff's motion for summary judgment on June 27, 2003. At the conclusion of that argument, we directed plaintiff to submit affidavits in regard to its petition for an award of attorneys' fees and costs. We indicted that final judgment would be entered with our decision regarding the petition for fees and costs. As such, we consider defendant's appeal to be interlocutory. Defendant did not seek our leave to file his appeal.

Defendant Mr. Gehring is an individual doing business as Northeastern Vacuum Company (sometimes known as Kirby Northeastern Vacuum Company). Defendant's primary business address is 1043 Cotton Street, Reading, Pennsylvania 19602. Mr. Gehring admits that he is "in business to sell and service Kirby vacuums." Mr. Gehring admits to be doing the same for fifteen years. Defendant represents that the Kirby vacuums that he sells come with a one year factory warranty.

Although the name of defendant's business is "Northeastern Vacuum Cleaner Company", defendant advertised in the Verizon White Pages under both his company's name and as being "Kirby Vacuum Sales & Service". Moreover, defendant prominently used the Kirby trade name in the advertisements that go by his company's name in the yellow pages. These advertisements were featured in Yellow Pages editions distributed in Reading, Hamburg, and Pottstown, Pennsylvania. Mr. Gehring even went so far as to complain to Verizon that the Kirby trademark was not sufficiently highlighted in his advertisements and that he was not listed under "Kirby" in the trade name listings. These listings using plaintiff's Kirby trademarks were in the Verizon phone book from August 2000 to July 2001.

Scott Fetzer is a Delaware corporation with its principle place of business at 28800 Clemens Road, Westlake, Ohio. Plaintiff's vacuum business is conducted through "The Kirby Company," an unincorporated division of Scott Fetzer. Scott Fetzer has been promoting the Kirby trademark since 1930. Plaintiff has invested tens of millions of dollars in advertising and promoting the Kirby trademark.

Scott Fetzer owns all the trademarks upon which it alleges defendant has infringed. These trademarks include: United States Trademark Nos. 993,713; 1,135,-013; 1,135,020; 1,210,015; 1,210,016; 1,255,543; 2,004,420; 2,587,118 and possibly others. These trademarks include various trade logos having to do with "Kirby" vacuum cleaners and related products.

Plaintiff sells Kirby products in a very particular way that is both distinctive and designed to promote the Kirby trade name worldwide. The vacuum cleaners are sold through in-home demonstrations conducted by authorized dealers and distributors. Plaintiff attempts to build long term relationships with its clientele by offering a manufacturer's warranty and by offering to rebuild or repair its products at discounted rates.

Scott Fetzer did not authorize defendant to use any of its trademarks. Despite Mr. Gehring's lack of authority, Mr. Gehring uses Kirby trademarks in the course of his business. Plaintiff contends that Mr. Gehring uses the Kirby trademarks in a way that confuses and deceives the public concerning the products and services rendered by Mr. Gehring.

Defendant has knowingly engaged in advertising and promoting of products and services using the Kirby name without plaintiff's consent. Defendant's practices permit him to profit from Scott Fetzer's decades of promotion and advertising of the Kirby trade name. Furthermore, Mr. Gehring's practices lessen the worth of the Kirby name by confusing the public with lesser quality products and services provided by Mr. Gehring, but bearing the Kirby trademark.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper when no genuine issue of material fact is in dispute and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Federal Home Loan Mortgage Corp. v. Scottsdale Insurance Company*, 316 F.3d

431, 443 (3d Cir.2003). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 211 (1986); *see Federal Home Loan Mortgage Corp.,* 316 F.3d at 443. Thus, a "material" fact is one that is necessary to establish an element under the substantive law governing a claim. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510, 91 L.Ed.2d at 211. A fact is "genuine" if it is such that a reasonable jury could return a verdict for the non-moving party. *Id.*

When considering summary judgment, the court must accept the facts in the light most favorable to the non-moving party. While the non-moving party is not burdened to prove his case as he might at trial, "a party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510, 91 L.Ed.2d at 212 (quoting Fed.R.Civ.P. 56(e)). Because defendant has not objected or answer plaintiff's motion for summary judgment, we require that plaintiff set forth such undisputed facts that would permit the court to conclude that the plaintiff has established every element of his case as a matter of law.

## DISCUSSION

At the outset, we recognize that the Kirby trade name is famous. The Kirby name is widely known and recognized for high-quality vacuum cleaners. This recognition is evidenced by the authorized uses of the Kirby name by Nintendo and animated children's stories. The characters in these games and stories possess several vacuum-like qualities and use the Kirby name.

■ Moreover, seven of the eight trademarks at issue are "incontestable". "A trademark becomes incontestable after the owner files affidavits stating that the mark has been registered, that it has been in continuous use for five consecutive years, and that there is no pending proceeding and there has been no adverse decision concerning the registrant's ownership or right to registration." *Fisons Horticulture, Inc. v. Vigoro Industries Inc.,* 30 F.3d 466, n. 7 (3d Cir.1994); 15 U.S.C. § 1065.

Plaintiff contends that Trademark Nos. 993,713; 1,135,013; 1,135,020; 1,210,015; 1,210,016; 1,255,543; 2,004,420 are incontestable trademarks. Each of these trademarks has been registered, has been in continuous use for five years, and there is no pending proceeding nor adverse decision concerning Scott Fetzer's ownership. The remaining mark, No. 2,587,118, is owned by Scott Fetzer and there is no factual or legal dispute concerning its validity or its quality of being famous. Accordingly, we find that this mark is famous and owned by Scott Fetzer.

### Dilution [7]

■ Defendant's use of the Kirby trademark lowered the value and esteem

---

7. There are two counts of dilution and two counts of trademark infringement. Each group contains a federal law claim under the Lanham Act and a state law claim under Pennsylvania law. The federal statute and the state laws are identical except that the Pennsylvania law narrows the focus to acts within the Commonwealth. Consequently, we will address the non-jurisdiction elements of dilution and trademark infringement in turn, and discuss the jurisdictional elements for all claims under Federal and Pennsylvania law separately below.

of plaintiff's mark. To establish a claim for dilution a plaintiff must prove that:

1. The plaintiff is the owner of a [famous] mark . . . .

2. The defendant is making commercial use in interstate commerce of a mark or trade name.

3. Defendant's use began after the plaintiff's mark became famous, and

4. Defendant's use causes dilution by lessening the capacity of the plaintiff's mark to identify and distinguish goods or services.

*Times Mirror Magazines, Inc. v. Las Vegas Sports News, L.L.C.,* 212 F.3d 157, 163 (3d Cir.2000); *see* 15 U.S.C. § 1125(c). Under Pennsylvania dilution law, 54 Pa. C.S.A. § 1124, the elements for a dilution cause of action, except jurisdictional nexus, are the same as under Federal law.

■ As determined above, plaintiff's marks are undisputably famous and most are incontestable. Plaintiff also establishes that defendant is making commercial use of the marks in interstate, international, and intrastate commerce. Plaintiff utilizes a distinctive sales network around the United States whereby Kirby vacuums are sold only through door-to-door sales. Additionally, plaintiff has carefully crafted and coordinated its sales techniques across the United States to accomplish what it believes is the most advantageous for its share and stakeholders. Defendant admits being in the business of selling and servicing Kirby vacuum cleaners for fifteen years.[8]

Plaintiff also established that defendant's use began after the Kirby mark became famous. By defendant's own ad-

mission, he has been using the Kirby trade name in his business for approximately fifteen years. This use of the Kirby trademark began some 50 years after the Kirby mark became famous. As a result, we conclude that defendant's use began after the Kirby mark became famous. Thus, we conclude that the first three factors are established.

To satisfy the fourth element plaintiff must establish actual dilution.[9]

'The term 'dilution' means the lessening of the capacity of a famous mark to identify and distinguish goods or services, regardless of the presence or absence of-

(1) competition between the owner of the famous mark and other parties, or

(2) likelihood of confusion, mistake, or deception.'

. . . [T]hat does not mean that the consequences of dilution, such as an actual loss of sales or profits, must also be proved.

*Moseley v. v. Secret Catalogue, Inc.,* 537 U.S. 418, 432, 123 S.Ct. 1115, 1124, 155 L.Ed.2d 1, 15 (2003) (quoting 15 U.S.C. § 1127). In fact, where the competing entities are using marks that are identical, dilution may be reliably found using the circumstantial evidence of the identical marks. *Id.,* 537 U.S. at 434, 123 S.Ct. at 1125, 155 L.Ed.2d at 15.

In the instant case, defendant is selling plaintiff's products with plaintiff's marks without authorization. The marks used by defendant are identical to those owned by the plaintiff. Moreover, defendant is using

---

**8.** Plaintiff Scott Fetzer's Motion for Summary Judgment, Default, and Rule 37 Sanctions. Exhibit 25.

**9.** While the Pennsylvania Supreme Court has not ruled whether actual dilution must occur,

we note that the definitions of dilution in 54 Pa.C.S.A. § 1102 and 15 U.S.C. § 1127 are identical. As a result, we interpret the requirements for establishing a dilution claim under Pennsylvania and federal law to be identical.

the marks to sell products that were made and previously sold by plaintiff. Under these circumstances, the parties are in direct competition, and the likelihood for confusion by the general consuming public is great. When combined with the fact that Mr. Gehring is selling used and repaired products and falsely advertising that his merchandise comes with a one-year-manufacturer's guarantee, plaintiff has established actual harm and dilution.

### Trademark Infringement/Unfair Competition

■ Plaintiff's remaining three claims are for trademark infringement and unfair competition. The elements for these three claims are identical except that the federal claims require an effect on interstate commerce. In *Browning King Co. v. Browning King Co.*, 176 F.2d 105, 106 (3d Cir. 1949), the United States Court of Appeals for the Third Circuit held that the elements of federal unfair competition and Pennsylvania unfair competition are the same. Moreover, in *Louis Vuitton Malletier and Oakley, Inc. v. Veit*, 211 F.Supp.2d 567, 580 (E.D.Pa.2002), our colleague United States Senior District Judge Lowell A. Reed, Jr., held that the elements for trademark infringement and unfair competition are the same.

■ To prove these claims "a plaintiff must show: (1) the mark is valid and legally protectable; (2) the mark is owned by the plaintiff; and (3) the defendant's use of the mark to identify goods and services is likely to create confusion concerning the origin of the goods or services." *Fisons Horticulture, Inc. v. Vigoro Industries, Inc.*, 30 F.3d 466, 472 (3d Cir.1994). "The first two requirements, validity and legal protectability, are proved where, as here, a mark was federally registered and has become 'incontestible' under the Lanham Act." *Id.* Thus, we conclude that the first two elements are established

for marks 993,713; 1,135,013; 1,135,020; 1,210,015; 1,210,016; 1,255,543; and 2,004,420.

The remaining mark being infringed upon is No. 2,587,118. The trademark was issued to plaintiff on July 2, 2002. Defendant does not argue that plaintiff does not own this mark or that plaintiff is not legally entitled to the mark. Indeed, we find no basis upon which defendant could assert such arguments. Consequently, we find that plaintiff has established the first two elements concerning the 2,587,118 mark.

■ The third prong is satisfied because the defendant is using markings identical to plaintiff's trademarks for his commercial gain. *See Moseley*, 537 U.S. at 434, 123 S.Ct. at 1125, 155 L.Ed.2d at 15. Both Scott Fetzer and Mr. Gehring are in the business of selling and repairing vacuum cleaners. In fact, Mr. Gehring is attempting to sell and repair plaintiff's products.

Defendant deceived the public by placing advertisements in the Yellow Pages telephone book and in his store that indicate his affiliation with Kirby. Moreover, Mr. Gehring has continually, even during the course of this litigation, claimed that he has the right to pass himself off as a licensed Kirby dealer. However, there is no evidence to support defendant's purported connection with Scott Fetzer.

We find that defendant is not authorized to use the Kirby trade name or mark. Consequently, we conclude that plaintiff has establishes every element of its unfair competition and trademark infringement claims as a matter of law and undisputed fact.

### Jurisdiction

Despite the fact that defendant's offensive conduct was performed entirely within Pennsylvania, Mr. Gehrings' use of plain-

tiff's Kirby trademarks substantially affected interstate commerce, and thus satisfy the jurisdiction requirements of the Lanham Act. In accordance with the Interstate Commerce Clause, U.S. Const. art. I, § 3, Congress may regulate "the use of the channels of interstate commerce ..., the instrumentalities of interstate commerce ..., even though the threat may come only from intrastate commerce ..., and those activities having a substantial relation to interstate commerce." *United States v. Lòpez,* 514 U.S. 549, 558–559, 115 S.Ct. 1624, 1629–1630, 131 L.Ed.2d 626, 637 (1995).

In trademark cases, Congress has legislated to the limit of its jurisdictional restrictions. *See Jellibeans, Inc. v. Skating Clubs of Georgia, Inc.,* 716 F.2d 833, 838 (11th Cir.1983); *Purolator, Inc. v. EFRA Distributors, Inc.,* 687 F.2d 554, 559 (1st Cir.1982); *Mother Waddles Perpetual Mission, Inc. v. Frazier,* 904 F.Supp. 603, 611 (E.D.Mich.1995).

■ In order for plaintiff's claims to meet the jurisdictional requirement it need only establish that it uses its trademarks in interstate commerce or in a way that affects interstate commerce. There is no requirement that defendant must be infringing upon the mark in interstate commerce. To have such a restriction would reward an offender with immunity if he confined his illegal activities within the jurisdiction of one state. There is no such safe harbor provision in the jurisdictional framework of the statute or, in fact, in Congress' power to regulate under the Interstate Commerce Clause. *See Jellibeans,* 716 F.2d at 839.

Plaintiff has adduced sufficient evidence that it not only uses the Kirby marks in interstate commerce, but also in international commerce. Plaintiff sells Kirby vacuum cleaners throughout the United States. It has obtained trademark protection for Kirby in 80 foreign countries.

Plaintiff's use of its trademark satisfies the jurisdiction component of the Lanham Act, and we conclude that Counts I, II, and III are properly before the court.

Likewise, we find that the jurisdiction component of the Pennsylvania trademark laws are met. There is no dispute that plaintiff uses the Kirby trademark in its sales of Kirby vacuum cleaners in Pennsylvania and that the whole of defendant's trademark infringement, dilution, and unfair competition occurred within Pennsylvania. Accordingly, we conclude that the jurisdiction nexus required for the application of Pennsylvania law in Counts IV and V to the facts presented herein is established.

### Attorney's Fees

■ Pursuant to our Order dated June 27, 2003, plaintiff supplemented its request for judgment on July 31, 2003 by filing Plaintiff Scott Fetzer's Statement in Support of an Order Awarding to Plaintiff Attorney Fees and Costs. Plaintiff seeks an award of attorneys' fees in the amount of $92,675.75 and an award of costs in the amount of $5,280.03 for a total award of $97,955.78.

In support of its petition, plaintiff submits affidavits from Robert P. Ducatman, Esquire, Margaret S. Woodruff, Esquire, and Robert G. Shumay, Esquire. Mr. Ducatman details the attorneys' fees and costs generated by the law firm Jones Day, attorney for plaintiff, in the course of the instant litigation. Ms. Woodruff attests to the fees and costs generated by the law firm Schnader, Harrison, Segal & Lewis, LLP, local counsel for plaintiff, in the course of the instant litigation. Mr. Shumay's affidavit confirms that Scott Fetzer employed both Jones Day and Schnader, Harrison, Segal & Lewis, LLP to litigate the within matter for it and that Scott Fetzer is liable for all of the fees and costs

referred to in both Mr. Ducatman's and Ms. Woodruff's affidavits. Plaintiff also includes a detailed accounting of how, when, and why attorneys' fees were generated at both Jones Day and Schnader, Harrison, Segal & Lewis, LLP.

Plaintiff is entitled to an award of both attorneys' fees and costs for successfully litigating this matter. *See* 15 U.S.C. § 1117. Mr. Gehring presented no meritorious defenses to the Complaint. Moreover, we note that plaintiff offered to settle the within matter by a consent decree whereby defendant would simply have had to agree to desist his infringing conduct. Defendant's refusal to acknowledge the principles of trademark law is responsible for the continuation of this action. We further observe that if defendant had availed himself of the sage direction of Magistrate Judge Rapoport to seek counsel, this matter may have been better resolved.[10]

Under of the circumstances of the within matter, we conclude that an award of $50,000.00 attorneys' fees and $5,280.30 costs is appropriate. Consequently, we award those amounts.

### Conclusion

For all the foregoing reasons, we enter judgment in favor of plaintiff on Counts I, II, III, IV, and V of the Complaint. We further award plaintiff attorneys' fees in the amount of $50,000.00 and costs in the amount of $5,280.03.

### ORDER

NOW, this 19th day of September, 2003, upon consideration of Plaintiff Scott Fetzer's Statement in Support of an Order Awarding to Plaintiff Attorney Fees and Costs filed July 31, 2003, which statement is uncontested; upon consideration of Plaintiff Scott Fetzer's Motion for Summary Judgment, Default, and Rule 37 Sanctions, which motion was filed June 6, 2003, which motion is unopposed; upon consideration of Plaintiff Scott Fetzer's Memorandum in Support of Motion for Summary Judgment, Default, and Rule 37 Sanctions, which accompanied plaintiff's motion; upon consideration of the Appendix of Exhibits in Support of Plaintiff's Motion for Summary Judgment, Default, and Rule 37 Sanctions, which accompanied the motion; upon consideration of the Affidavit of Robert G. Shumay and Exhibits A through I in Support of Plaintiff's Motion for Summary Judgment, Default, and Rule 37 Sanctions, which accompanied the motion; upon consideration of the Declaration of Arthur F. Tredinnick and Exhibits A through L in Support of Plaintiff's Motion for Summary Judgment, Default, and Rule 37 Sanctions, which accompanied plaintiff's motion; and after oral argument held June 27, 2003,

*IT IS ORDERED* that judgment is rendered in favor of plaintiff on Count I of the Complaint.

*IT IS FURTHER ORDERED* that judgment is rendered in favor of plaintiff on Count II of the Complaint.

*IT IS FURTHER ORDERED* that judgment is rendered in favor of plaintiff on Count III of the Complaint.

*IT IS FURTHER ORDERED* that judgment is rendered in favor of plaintiff on Count IV of the Complaint.

*IT IS FURTHER ORDERED* that judgment is rendered in favor of plaintiff on Count V of the Complaint.

*IT IS FURTHER ORDERED* that plaintiff is awarded attorney's fees in the amount of $50,000.00.

*IT IS FURTHER ORDERED* that plaintiff is awarded costs in the amount of $5,280.03.

---

10. This directive was codified in Magistrate Judge Rapoport's January 7, 2003, Order.

*IT IS FURTHER ORDERED* that the Clerk of Court may close the within civil action for statistical purposes.